UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                     :
RICHARD BREUNINGER and ITGA, LLC,       :
                                       :
                 Plaintiffs,          :
                                       :                     20 Civ. 7033 (JPC)
          -v-                           :
                                       :                   OPINION AND ORDER
T. EDWARD WILLIAMS, JANE DOE WILLIAMS, and :
PEYROT AND ASSOCIATES, PC,            :
                                       :
                 Defendants.        :
                                       :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        ITGA, LLC ("ITGA") and its sole member Richard Breuninger ("Breuninger") have sued

T. Edward Williams ("Williams") for legal malpractice in his handling of a bankruptcy petition

for ITGA, claiming that his malpractice caused ITGA to lose out on a lucrative contract.  Plaintiffs

also claim that Peyrot and Associates, PC ("Peyrot"), a law firm that employed Williams during

part of the relevant time, is vicariously liable for his actions.  And they further name Williams's

wife, identified only as Jane Doe Williams, on the theory that Williams was acting in furtherance

of their marital community.  Williams, Jane Doe Williams, and Peyrot have moved to dismiss the

Second Amended Complaint.  Because Plaintiffs failed to sufficiently plead either an attorney-

client relationship with Williams or actual damages, and therefore they cannot establish Peyrot's

or Jane Doe Williams's liability, the motions are granted and the Court dismisses this action.  The

dismissal, however, is without prejudice to Plaintiffs filing another amended complaint in the event

they are able to cure the pleading deficiencies discussed herein.

## I. Background[1]

ITGA is an Arizona Limited Liability Company whose sole member is Breuninger.  SAC ¶ 2.  Williams, a resident of Colorado and New York, is an attorney licensed to practice in those two states, and Jane Doe Williams is his spouse.  *Id.* ¶¶ 3, 5, 8.  Peyrot, a New York law firm, employed Williams from September 1, 2018 to at least January 22, 2019.  *Id.* ¶¶ 9-10, 57.

On December 1, 2017, ITGA purchased a property at 16400 S. 14th Avenue, Phoenix, Arizona known as the "Foothills Club West Golf Course" ("Club West") for $1,300,000.  *Id.* ¶ 23.  Creditors of ITGA held a promissory note for $1,300,000 secured with a lien against Club West.  *Id.* ¶¶ 24-25.  After ITGA defaulted on that note, the creditors began foreclosure proceedings for Club West on May 15, 2018, setting a foreclosure sale date of August 21, 2018.  *Id.* ¶¶ 26-28.

To pay off the note and prevent the loss of Club West, as well as to pay off other debt and for operating capital, Breuninger discussed with Muhammad Howard ("Howard") an investment proposal in which Howard or one of his organizations would invest $2,000,000 in ITGA.  *Id.* ¶¶ 29-30.  Then, on August 17, 2018, an entity known as "Ultegra" sent a term sheet to ITGA under which it would purchase Club West, as well as 90% of ITGA's assets, for $2,000,000.  *Id.* ¶¶ 31-32.  This purchase was contingent "upon approval of the asset purchase by Ultegra's internal credit committee in its sole and absolute discretion and the execution of a formal purchase agreement."  *Id.* ¶ 33.  The Second Amended Complaint alleges that, "[a]ccording to the term sheet, the purchase was to take place within 21 days of the execution of the term sheet."  *Id.* ¶ 35.

Also on August 17, 2018, ITGA executed a purchase agreement with Dab Drilling, a

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Second Amended Complaint. Dkt. 38 ("SAC"); *see also Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

limited liability company in which either Ultegra or Howard is a principal and holds an ownership interest.  *Id.* ¶¶ 36-37.  This agreement, which would have entailed Dab Drilling purchasing "directly from Richard Breuninger a 90% membership interest in ITGA," was not executed by Dab Drilling. *Id.* ¶¶ 38-39.

To ward off the foreclosure of Club West and preserve it as an asset of ITGA, a Chapter 11 bankruptcy petition was filed on behalf of ITGA on August 20, 2018.  *Id.* ¶¶ 40, 42.  Based on the allegations in the Second Amended Complaint, however, it does not appear that anyone at ITGA directed the filing of that bankruptcy petition.  Instead, "Ultegra, Dab Drilling, and/or Muhammad Howard requested Defendant T. Edward Williams file a Chapter 11 Bankruptcy on behalf of ITGA" on August 17, 2018.  *Id.* ¶ 41.  Three days later, Williams filed a Chapter 11 petition for ITGA in the Bankruptcy Court of the United States District Court for the District of Arizona, signing the petition on behalf of ITGA and listing Breuninger as ITGA's authorized representative.  *Id.* ¶¶ 43, 46.

On August 22, 2018, the Bankruptcy Court issued a Notice of Incomplete or Deficient Filings because ITGA's bankruptcy petition lacked a list of creditors, as well as schedules of assets and liabilities and a statement of financial affairs. *Id.* ¶ 50.  After Williams failed to file the missing documents, or seek an extension of time to do so, the Bankruptcy Court dismissed the bankruptcy case on August 28, 2018.  *Id.* ¶¶ 51-53.  Williams never refiled a Chapter 11 petition for IGTA. *Id.* ¶¶ 55, 58.  About one week after dismissal of the bankruptcy case, on September 4, 2018, ITGA's creditors foreclosed on Club West.  *Id.* ¶ 59.

Williams then moved before the Bankruptcy Court to reinstate the bankruptcy case and for an automatic stay on September 7, 2018.  *Id.* ¶ 60.  This motion was additionally signed by Leonard V. Sominksy, an Arizona attorney who had represented ITGA since approximately August 20,

2018.  *Id.* ¶¶ 62-64.  ITGA's creditors opposed this motion, maintaining that a bankruptcy cannot be reinstated to avoid a completed foreclosure.  *Id.* ¶¶ 66-68.  The Bankruptcy Court never addressed the motion to reinstate, and ITGA's bankruptcy was closed on January 22, 2019.  *Id.* ¶¶ 70-71.

Plaintiffs brought this action on August 28, 2020, alleging legal malpractice.  Dkt. 1.  The case was reassigned to the undersigned on September 29, 2020.  The Court ordered Plaintiffs to amend their complaint on December 23, 2020 due to Plaintiffs' failure to adequately allege the citizenship of each party.  Dkt. 18.  Plaintiffs filed an amended complaint on December 30, 2020. Dkt. 19.  The Court again ordered Plaintiffs to amend their complaint for still not sufficiently pleading jurisdiction in compliance with the Court's previous order.  Dkt. 37.  After Plaintiffs filed the Second Amended Complaint on October 21, 2021, Dkt. 38, Peyrot moved to dismiss for failure to state a claim on November 4, 2021, Dkts. 47, 48 ("Peyrot Motion"), and Williams and Jane Doe Williams (the "Williams Defendants") moved to dismiss for failure to state a claim and lack of subject matter jurisdiction on November 26, 2021, Dkts. 54, 55 ("Williams Motion").

## II.  Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v.*

*Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citation omitted), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

### III.  Discussion

#### A.      Threshold Issues

The Court begins with certain threshold issues: (1) whether subject matter jurisdiction pursuant to 28 U.S.C. § 1332 exists; (2) what, if any, matters outside the four corners of the Second Amended Complaint may be considered at this stage; and (3) the appropriate state law that governs this legal malpractice dispute.

#### 1.      Subject Matter Jurisdiction

The Court first addresses Peyrot's challenge to federal diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Peyrot Motion at 8.  Section 1332 provides district courts with jurisdiction over civil actions if the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute "is between . . . citizens of different states."  28 U.S.C. § 1332(a).  The Second Amended Complaint sufficiently alleges diversity of the parties. *See* SAC ¶¶ 1-9.  Peyrot argues, however, that ITGA cannot satisfy the amount-in-controversy requirement because of the "speculative" nature of the damages sought.  Peyrot Motion at 8.

The Second Amended Complaint alleges that Defendants' "breach of their duties of care owed to Plaintiff IGTA caused Plaintiff IGTA to lose Club West to foreclosure proceedings resulting in the loss of the $2,000,000 contract with Howard, Ultegra, and/or Dab Drilling."  SAC ¶ 89.  There exists a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Scherer v. Equitable Life Assur. Soc. of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty.*

*Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)).  To overcome this presumption, Peyrot would need to show that "the legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996)).  Peyrot has made no such showing.[2]  The Court therefore finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### 2. Consideration of Matters Outside the Complaint

After receiving leave of the Court, the Williams Defendants filed a supplement to their motion to dismiss arguing that the Court should consider a deposition of Breuninger taken in a separate case on January 13, 2022.  Dkts. 64-65.  Williams then filed the transcript of that deposition.  Dkt. 67-1.  Significantly, the Williams Defendants ask the Court to consider that transcript for the substance of Breuninger's testimony.  Dkts. 64, 65.

It is well-settled that the materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited.  *See Interpharm, Inc.*, 655 F.3d at 141; *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 202 (E.D.N.Y. 2006) (noting that "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991))).  In addition to the allegations in a complaint, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint

---

[2] Peyrot's reliance on *Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC*, 75 F. Supp. 2d 279 (S.D.N.Y. 1999), is misplaced.  *See* Peyrot Motion at 8.  In *Creations Con Idea, S.A. de C.V.*, the court found that the amount-in-controversy requirement was satisfied where the plaintiff alleged damages in excess of $404,000.  75 F. Supp. 2d at 280-81.

'relies heavily upon [the document's] terms and effect.'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Moreover, "[a] court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

The Second Amended Complaint makes no reference to Breuninger's deposition.  This Court therefore cannot take judicial notice of the deposition for anything more than to establish the "fact of such litigation and related filings."  *Id.*  Yet, the Williams Defendants ask the Court to rely on Breuninger's deposition transcript for the substance of the testimony contained therein. Dkt. 65 at 2-3 ("[T]he undersigned presents [Breuninger]'s transcripts in [Breuninger]'s own words to help this Court understand that [Breuninger]'s First and Second Complaints are purposefully vague and that were this Court inclined to grant Plaintiff[s] leave to amend, such a leave would be futile because [Breuninger]'s deposition transcripts make clear that Plaintiffs do not have a viable claim for legal malpractice or for any other claim.").  And the Williams Defendants have presented no authorities permitting the Court to consider testimony from a deposition in a separate litigation in deciding a Rule 12(b)(6) motion to dismiss.[3]  The Court declines to do so.

---

[3] While the Court may consider a wider range of materials in deciding a motion under Rule 12(b)(1), *see APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." (alteration in original, internal quotation marks and citations omitted)), the Williams Defendants do not argue that the deposition is relevant to any jurisdictional issue.  *See* Dkt. 63.

### 3.      Choice-of-Law

Federal courts sitting in diversity apply the choice-of-law rules of the state in which they reside.  *See Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003).  "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute."  *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030 (2d Cir. 1996) (citation omitted).

In legal malpractice cases, New York's interest analysis considers whether the defendant attorney is licensed to practice law in New York.  *See Wolfson v. Moskowitz*, No. 08 Civ. 8796 (DLC), 2009 WL 1515674, at *2, 4-5 (S.D.N.Y. June 1, 2009) ("In a legal malpractice case, New York's interest is predominant when the attorney being sued is licensed in New York and the underlying trial took place in New York." (citations omitted)).  Similarly, "[a] state has a strong interest in regulating the conduct of a law firm licensed to practice within its borders, and a law firm consents to be so regulated when it locates its offices in a particular state."  *LNC Inv., Inc. v. First Fidelity Bank, Nat. Ass'n*, 935 F. Supp. 1333, 1350-51 (S.D.N.Y. 1996).

The Second Amended Complaint alleges that, at the relevant time, Williams was an attorney licensed to practice in New York and Colorado.  SAC ¶ 8.  It further alleges that "Defendant Peyrot Law Firm" "was a New York professional corporation with their principal place of business and thus domiciled in New York."  *Id.* ¶ 9.  Therefore, because this case involves allegations concerning the conduct of an attorney licensed in New York (and another state) and of a New York law firm, New York has the most significant interest in the case and New York law applies.

### B.      Legal Malpractice Claim

Having determined that New York law governs this dispute, the Court turns to whether Plaintiffs have "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To

plead a legal malpractice claim under New York law, a "plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citing *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 573 N.Y.S.2d 981 (App. Div. 1991)).  For reasons that follow, the Second Amended Complaint fails to plead either the existence of a valid attorney-client relationship or actual damages.  Because Peyrot's liability depends on a theory of vicarious liability for Williams's conduct, Plaintiffs' legal malpractice claim against Peyrot necessarily fails as well.  And since any possible theory of liability as to Williams's wife would depend on his liability, the claims against her too must be dismissed.

### 1.    Attorney-Client Relationship

The Williams Defendants assert that ITGA fails to state a claim for legal malpractice because ITGA was not Williams's client.  Williams Motion at 19.  In New York, the existence of an attorney-client relationship is generally a necessary element of a cause of action for legal malpractice.  *Block v. Brecher, Fishman, Feit, Rubin & Tannenbaum*, 753 N.Y.S.2d 84, 2003 N.Y. Slip Op. 10135 (App. Div. Jan. 14, 2003) (relying on "the general rule that absent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable for professional negligence to third parties not in privity").  While a formal contract is not required to form an attorney-client relationship, "the existence of such a relationship depends upon whether there is contractual privity and a legally binding contract."  *Pope v. Rice,* No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *6 (S.D.N.Y. Mar. 14, 2005) (citations omitted).  In conducting this inquiry, a court examines "the words and actions of the parties to ascertain if an attorney-client relationship was formed."  *Noble v. Mt. Olivet Church, Inc.*, No. 18 Civ. 7871 (NRB), 2021 WL 930626, at *3 (S.D.N.Y. Mar. 10,

2021) (internal quotation marks omitted).   In particular, the existence of an attorney-client relationship depends on a variety of factors including:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in an aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable.

*Pope*, 2005 WL 613085, at *6 (quoting *M.J. Woods, Inc. v. Conopco, Inc.,* 271 F. Supp. 2d 576, 585 (S.D.N.Y. 2003)).

The attorney-client relationship requirement can alternatively be satisfied by the "near privity" doctrine, which provides for liability from a "relationship approaching privity or other special circumstance." *Learning Annex, L.P. v. Blank Rome LLP*, 966 N.Y.S.2d 78, 79 (App. Div. 2013) (citation omitted).   Near privity is established when (1) an attorney is aware that his or her services will be used for a specific purpose; (2) the plaintiff relies on those services; and (3) the attorney engaged in some conduct evincing some understanding of the plaintiff's reliance. *See Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 787 N.Y.S.2d 15, 18 (App. Div. 2004).[4]

---

[4] The Williams Defendants argue that the failure to establish an attorney-client relationship presents an issue of standing.  Williams Motion at 19.  The Court disagrees.  To establish standing, a plaintiff must "allege an injury in fact that is both particularized and concrete," where particularized injuries "affect the plaintiff in a personal and individual way" and concrete injuries are "physical, monetary, or cognizable intangible harms traditionally recognized as providing a basis for a lawsuit in American courts." *EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis, LLP*, No. 21-947, 2022 WL 3904541, at *1 (2d Cir. Aug. 31, 2022) (cleaned up).  The question of the relationship between ITGA and Williams goes to whether ITGA has a cause of action, not a question of standing. *See Am. Med. Distribs. v. Macdonald Tuskey*, No. 16 Civ. 6016 (VSB), 2018 WL 1478301, at *2 n.3 (S.D.N.Y. Mar. 23, 2018); *see also Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("The standing question is distinct from whether [plaintiff] has a cause of action." (citation omitted)).  Plaintiffs' allegation that they lost a contract worth $2,000,000 sufficiently satisfies the traditional standing requirements of a particularized and concrete injury in fact.

Here, Plaintiffs have failed to allege an attorney-client relationship or a near-privity relationship between ITGA and Williams.  Plaintiffs have alleged very few "words and actions of the parties" from which the Court could infer that an attorney-client relationship had been formed between ITGA and Williams.  The Second Amended Complaint is devoid of allegations of any fee arrangement they entered into, any fee in fact paid by ITGA, any written representation agreement between ITGA and Williams, or any informal relationship pursuant to which Williams would provide gratuitous services.  Plaintiffs also do not allege that ITGA actually believed Williams was its attorney at any point in time.  Of the six factors listed above, only the fourth—whether Williams actually represented ITGA in an aspect of the bankruptcy—is both applicable[5] to the current matter and weighs slightly in favor of ITGA.

As to that fourth factor, Williams did, according to the Second Amended Complaint, file a bankruptcy petition on behalf of ITGA and list himself as its representative.  SAC ¶¶ 43, 46.  However, the creation of documents identifying oneself as a particular entity's attorney is not alone sufficient to form an attorney-client relationship.  *See Wei Cheng Chang v. Pi*, 733 N.Y.S.2d 471, 473 (App. Div. 2001) (holding that an application for title insurance, and the transmission of letters to a mortgagor and title insurance company, signed by an attorney and listing that attorney as the plaintiff's attorney was insufficient to establish an attorney-client relationship without other facts); *see also Noble*, 2021 WL 930626, at *2-3, *2 n.4 (holding that an attorney-client relationship existed when an attorney drafted a contract listing herself as the client's attorney, represented to third parties that she represented the client, and the client "accepted her representations that she was the [client's] attorney").  Plaintiffs do not plead any facts indicating ITGA had any interaction

---

[5] As to the sixth factor, there is no litigation at issue in this case that Williams could have excluded ITGA from.

with Williams whatsoever to establish the attorney-client relationship.  To the contrary, Plaintiffs actually have pleaded facts undermining the existence of such a relationship.  Plaintiffs allege not that ITGA directed Williams to file the bankruptcy petition, but that third parties Ultegra, Dab Drilling, and/or Howard requested that Williams file that petition.  SAC ¶ 41.

Nor have Plaintiffs pleaded facts sufficient to establish near privity.  Plaintiffs fail to allege any facts indicating that ITGA relied on Williams's services or that Williams acted knowing that ITGA would rely on his services.  As stated, third parties, not ITGA, allegedly directed Williams to file the bankruptcy petition.  Plaintiffs do not even allege that ITGA knew of Williams's filings at the time they were made in Bankruptcy Court, let alone that it took any action due to the filings or otherwise relied upon them.  For example, Plaintiffs have not alleged that but for Williams's filing, ITGA would have filed its own bankruptcy petition.

## 2.  Actual Damages

Even if Plaintiffs had sufficiently alleged the existence of an attorney-client relationship between ITGA and Williams, their allegations remain deficient for an independent reason: Plaintiffs have failed to plead actual damages.  ITGA's stated theory of damages is that "Defendants Williams and Peyrot Law Firm's breach of their duties of care owed to Plaintiff ITGA caused Plaintiff ITGA to lose Club West to foreclosure proceedings resulting in the loss of the $2,000,000 contract with Howard, Ultegra, and/or Dab Drilling."  SAC ¶ 89.

Under New York law, "[m]ere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice."  *Plymouth Org., Inc. v. Silverman, Collura & Chernis, P.C.,* 799 N.Y.S.2d 813, 814 (App. Div. 2005) (citation and internal quotation marks omitted); *see also Holschauer v. Fisher*, 772 N.Y.S.2d 836, 837 (App. Div. 2004) ("Conclusory allegations of damages or injuries predicated on speculation cannot suffice for a

malpractice action." (citation omitted)).  Instead, the "plaintiff must prove that it was the attorney's negligence which proximately caused the *actual and ascertainable damages* that resulted." *Plymouth Org., Inc.,* 799 N.Y.S.2d at 814-15 (emphasis added) (citation omitted).

Plaintiffs' own allegations show why their theory of damages is too speculative to support a claim for legal malpractice.  Even assuming *arguendo* that Williams had breached some duty to ITGA and that but for that breach the bankruptcy would successfully have delayed or prevented the foreclosure of Club West, Plaintiffs does not plead facts indicating that ITGA would have been able to successfully contract with any counter party for $2,000,000.  Plaintiffs instead point to a term sheet memorializing terms including a $2,000,000 purchase.  SAC ¶ 32.  However, this term sheet brought with it two prior conditions.  First, the purchase would need to be approved by "Ultegra's internal credit committee in its sole and absolute discretion," and second, a "formal purchase agreement" (*i.e.*, a document distinct from the term sheet) would need to be executed. *Id.* ¶ 33.  Essentially, Plaintiffs' allegations boil down to their optimistic speculation that had Club West not been foreclosed, Ultegra or some other entity *might* have paid $2,000,000 for it.

These conditions make Plaintiffs' damages assertions too speculative to survive a motion to dismiss because the realization of those damages would have depended entirely on the actions of a third party.  As such, these allegations resemble those in *Marinelli v. Sullivan Papain Block McGrath & Cannavo, P.C.*, 169 N.Y.S.3d 90 (App. Div. 2022).  In *Marinelli*, also a legal malpractice action, the Appellate Division held that the plaintiff's damages allegations were too speculative to make out a claim because the realization of those damages depended on an action that was in the sole discretion of a third party. *Id.* at 93-94.  Many other decisions of the Appellate Division have reached similar results. *See, e.g.*, *Sierra Holdings, LLC v. Phillips, Weiner, Quinn, Artura & Cox*, 977 N.Y.S.2d 751, 752 (App. Div. 2013) (holding that the allegation that the

plaintiff would have participated in a mortgage sale, purchased a property, and resold that property at a profit but for the attorney's conduct were too speculative to constitute actual damages); *Bua v. Purcell & Ingrao, P.C.*, 952 N.Y.S.2d 592, 598-99 (App. Div. 2012) (holding that damages were too speculative to support a claim when they depended on speculation that a third party would have refrained from taking certain actions if the attorney had acted differently since those actions were "within the sole discretion of the buyer"); *Holshauer*, 772 N.Y.S.2d at 837 (holding that damages in the form of a medical license which the plaintiff claimed he would have obtained but for his attorney's negligence were speculative and conclusory because there was "no guarantee" that the issuing agency would have granted the license); *Giambrone v. Bank of N.Y.*, 677 N.Y.S.2d 608, 609 (App. Div. 1998) (holding that the damages sought were speculative "because they are based upon terms of the unexecuted single life trust," which put the plaintiff's right to income at the discretion of the trustees, and explaining that "[m]ere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice" (citation omitted)).  The Court therefore finds that the Second Amended Complaint fails to state an attorney malpractice claim for the additional reason that it does not plead actual damages.

### 3.   Remaining Defendants

Plaintiffs' allegations against Peyrot depend on the firm's vicarious liability for Williams's conduct under the doctrine of *respondeat superior*, since the only potentially relevant action that Peyrot allegedly took was to hire Williams.  SAC ¶ 10; *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.,* 777 N.Y.S.2d 4, 6 (2004) ("The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment." (quoting *Judith M. v. Sisters of Charity Hosp.,* 693 N.Y.S.2d 67, 68 (1999))).  As such, because the Court dismisses Plaintiffs' claim against Williams, it also dismisses their claim

against Peyrot.   Similarly, because the Second Amended Complaint alleges only that Jane Doe

Williams is married to Williams, and that Williams acted in furtherance of their marital community

which was enriched by his conduct, SAC ¶¶ 5-6, the Court dismisses Plaintiffs' claim against her

as well.

### C.       Leave to Amend

Lastly, the Court considers whether to grant leave to amend.   Under Rule 15(a) of the

Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires."  Fed.

R. Civ. P. 15(a)(2).   Plaintiffs have not asked the Court for leave to amend their Complaint.   "But

even when a party does not ask for leave to amend, the Court may grant leave to amend *sua*

*sponte*."  *In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *18

(S.D.N.Y. Mar. 31, 2022) (citation and internal quotation marks omitted) (collecting cases).   When

deciding whether to *sua sponte* grant leave to amend, "courts will consider many factors, including

undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to

the opposing party, and futility."  *Morales v. Kimberly-Clark Corp.*, No. 18 Civ. 7401 (NSR), 2020

WL 2766050, at *9 (S.D.N.Y. May 27, 2020) (citation omitted).   After considering these factors,

the Court will grant Plaintiffs leave to file a Third Amended Complaint, in the event Plaintiffs

believe they can plead facts that would adequately state a claim upon which relief may be granted.

Although the Court twice previously granted leave to amend, those amendments were primarily

geared at curing insufficient allegations of diversity of citizenship.   Moreover, with discovery

having not yet occurred, this case "is still in its infancy, [so] there would be minimal prejudice to

Defendant[s] in permitting Plaintiff[s] to make one final amendment."  *Id.* at *10.   The Court

emphasizes, however, that Plaintiffs should amend only if they are able to resolve the pleading

deficiencies outlined in this Opinion and Order.

## IV.  Conclusion

For the reasons stated above, the motions to dismiss filed by T. Edward Williams, Jane Doe Williams, and Peyrot and Associates, PC are granted.  Plaintiffs' Second Amended Complaint is dismissed without prejudice.  In the event Plaintiffs decide to file another amended complaint, they must file it within thirty days of this Opinion and Order.  If Plaintiffs fail to file a Third Amended Complaint within thirty days, and do not show good cause to excuse the failure to do so, the Court will dismiss this action with prejudice.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 47 and 54.

SO ORDERED.

Dated: September 22, 2022
      New York, New York

JOHN P. CRONAN
United States District Judge

16