UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                     :

RICHARD BREUNINGER *et al.*,              :
                                       :
               Plaintiffs,      :
                                       :             20 Civ. 7033 (JPC)
     -v-                         :
                                       :         <u>OPINION AND ORDER</u>

T. EDWARD WILLIAMS *et al.*,          :
                                       :
               Defendants.     :
                                       :
---------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

     In this legal malpractice action, ITGA, LLC ("ITGA") and its sole member Richard Breuninger ("Breuninger") allege that T. Edward Williams ("Williams") negligently handled ITGA's bankruptcy petition, causing ITGA to lose possession of property in Arizona. Plaintiffs also seek to hold Peyrot and Associates, PC ("Peyrot"), a law firm that employed Williams during part of the relevant time, vicariously liable for his actions. And they further name as a defendant Williams's wife, identified only as Jane Doe Williams (with Williams, the "Williams Defendants"), on the theory that Williams was acting in furtherance of their marital community.

     On September 22, 2022, the Court dismissed without prejudice Plaintiffs' Second Amended Complaint, Dkt. 38, finding that it failed to sufficiently plead an attorney-client relationship and damages. *See Breuninger v. Williams*, No. 20 Civ. 7033 (JPC), 2022 WL 4384000, at *5-7 (S.D.N.Y. Sept. 22, 2022). The Court, however, granted leave for Plaintiffs to file another amended complaint in the event they could cure those pleading deficiencies. *Id.* at *7. Plaintiffs filed that Third Amended Complaint in October 2022. Dkts. 69, 70 ("TAC").

Williams, Jane Doe Williams, and Peyrot now move to dismiss the Third Amended Complaint. The Williams Defendants additionally have filed two motions for sanctions, one under Federal Rule of Civil Procedure 11 against Plaintiffs and their attorney and another under 28 U.S.C. § 1927 against Plaintiffs' attorney. Because Plaintiffs have now adequately alleged a claim of legal malpractice, the Court denies the motions to dismiss. And because the Court determines that granting either sanctions motion would require resolution of the core factual disputes underlying this case, the motions for sanctions are also denied without prejudice.

## I. Background

### A.    Facts[1]

ITGA is an Arizona limited liability company whose sole member is Breuninger. TAC ¶ 2. Williams, a resident of Colorado and New York, is an attorney licensed to practice in those two states, and Jane Doe Williams is his spouse. *Id.* ¶¶ 3, 5, 8. Peyrot, a New York law firm, employed Williams from September 1, 2018 to at least January 22, 2019. *Id.* ¶¶ 9-10, 68.

On December 1, 2017, ITGA purchased a property at 16400 S. 14th Avenue in Phoenix, Arizona, known as the "Foothills Club West Golf Course" ("Club West") for $1,300,000. *Id.* ¶ 23. Creditors of ITGA held a promissory note for $1,300,000, secured with a lien against Club West. *Id.* ¶¶ 24-25. On May 15, 2018, following ITGA's default on that note, the creditors began foreclosure proceedings for Club West, setting a foreclosure sale date of August 21, 2018. *Id.* ¶¶ 26-28.

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Third Amended Complaint. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (requiring the court to "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff[s'] favor" on a motion to dismiss pursuant to Rule 12(b)(6)). Many of these facts were identically alleged in the Second Amended Complaint, *see* Dkt. 38, and also were set out in the Court's Opinion and Order granting dismissal of that complaint, *see Breuninger*, 2022 WL 4384000, at *1-2.

To pay off the note and prevent the loss of Club West, as well as to pay off other debt and to provide operating capital, Breuninger discussed with Muhammad Howard ("Howard") an investment proposal in which Howard or one of his organizations would invest $2,000,000 in ITGA.  *Id.* ¶¶ 29-30.  Then, on August 17, 2018, an entity known as "Ultegra" sent a term sheet to ITGA under which it would purchase the commercial building and land at Club West, as well as 90% of ITGA's assets, for $2,000,000.  *Id.* ¶¶ 31-32.  This purchase was contingent "upon approval of the asset purchase by Ultegra's internal credit committee in its sole and absolute discretion and the execution of a formal purchase agreement."  *Id.* ¶ 33.  The Third Amended Complaint alleges that, "[a]ccording to the term sheet, the purchase was to take place within 21 days of the execution of the term sheet."  *Id.* ¶ 35.

Also on August 17, 2018, ITGA executed a purchase agreement with Dab Drilling, a limited liability company for which either Ultegra or Howard is a principal and holds an ownership interest.  *Id.* ¶¶ 36-37.  This agreement, which would have entailed Dab Drilling purchasing "directly from Richard Breuninger a 90% membership interest in ITGA," was not executed by Dab Drilling.  *Id.* ¶¶ 38-39.

To ward off the foreclosure of Club West and preserve it as an asset of ITGA, Williams filed a Chapter 11 bankruptcy petition on behalf of ITGA on August 20, 2018.  *Id.* ¶¶ 40, 52.  Based on the allegations in the Third Amended Complaint, however, it does not appear that anyone at ITGA initially directed the filing of that bankruptcy petition.  Instead, "Ultegra, Dab Drilling, and/or Muhammad Howard requested Defendant T. Edward Williams file a Chapter 11 Bankruptcy on behalf of ITGA" on August 17, 2018.  *Id.* ¶ 41.

Despite the fact that Plaintiffs did not request that Williams file the bankruptcy petition on ITGA's behalf, the Third Amended Complaint details communications between Williams and

3

Breuninger regarding the bankruptcy petition.  ITGA did not enter into a formal written contract or retainer agreement with Williams.  *Id.* ¶ 42.  Nor did ITGA pay Williams to file the bankruptcy petition on its behalf.  *Id.* ¶ 43.  Instead, Plaintiffs allege, Breuninger believed that Howard would pay Williams "for his services as ITGA's bankruptcy attorney because [Howard] had a long-standing, pre-existing attorney-client relationship" with Williams.  *Id.* ¶ 44.  Williams and Breuninger had two phone calls "[i]n preparation for filing the Chapter 11 Bankruptcy on behalf of ITGA" during which Williams "obtained information necessary to file a Chapter 11 Bankruptcy Petition from Richard Breuninger, as the authorized representative of ITGA," and "requested that Richard Breuninger sign the Chapter 11 Bankruptcy Petition as the authorized representative of ITGA."  *Id.* ¶¶ 45-47.  Williams then "sent the Chapter 11 Bankruptcy Petition to Richard Breuninger for the purpose of having Richard Breuninger review the Chapter 11 Bankruptcy Petition for accuracy and for the purpose of having Richard Breuninger authorize his signature to be placed on the Chapter 11 Bankruptcy Petition as the authorized representative of ITGA."  *Id.* ¶ 48.  Breuninger then authorized Williams to sign the petition on his behalf "[b]ased on the advice" of Williams.  *Id.* ¶ 49.  Breuninger, Plaintiffs allege, "had a subjective belief that Defendant T. Edward Williams was ITGA's bankruptcy attorney because Defendant T. Edward Williams agreed to file a Chapter 11 Bankruptcy Petition on behalf of ITGA."  *Id.* ¶ 50.  And allegedly, had Williams not filed the petition, "Breuninger would have engaged other bankruptcy counsel to timely file a Chapter 11 Bankruptcy Petition on behalf of ITGA."  *Id.* ¶ 51; *see also id.* ¶ 53 (alleging that, at the time Williams filed the bankruptcy petition, "Williams knew that if the Petition was not timely filed, ITGA would have lost [] Club West to foreclosure and that . . . Williams' services were necessary to preserve Club West as an asset of ITGA").

On August 20, 2018, Williams filed a Chapter 11 petition for ITGA in the United States Bankruptcy Court for the District of Arizona, signing the petition on behalf of ITGA and listing Breuninger as ITGA's authorized representative. *Id.* ¶¶ 52, 54; *see* Dkt. 1-8 at 5. On August 22, 2018, the Bankruptcy Court issued a Notice of Incomplete or Deficient Filings because ITGA's bankruptcy petition lacked a list of creditors, as well as schedules of assets and liabilities and a statement of financial affairs. TAC ¶ 61. After Williams failed to file the missing documents, or seek an extension of time to do so, the Bankruptcy Court dismissed the bankruptcy case on August 28, 2018. *Id.* ¶¶ 62-64. Williams never refiled a Chapter 11 petition for ITGA. *Id.* ¶¶ 65-66, 69. About one week after dismissal of the bankruptcy case, on September 4, 2018, ITGA's creditors foreclosed on Club West. *Id.* ¶ 70.

Williams then moved the Bankruptcy Court to reinstate the bankruptcy case and for an automatic stay on September 7, 2018. *Id.* ¶ 71. This motion was additionally signed by Leonard V. Sominksy, an Arizona attorney who had represented ITGA since approximately August 20, 2018. *Id.* ¶¶ 73, 75-76. ITGA's creditors opposed this motion, maintaining that a bankruptcy cannot be reinstated to avoid a completed foreclosure. *Id.* ¶¶ 78-80. The Bankruptcy Court never addressed the motion to reinstate, and ITGA's bankruptcy case was closed on January 22, 2019. *Id.* ¶¶ 82-83.

## B. Procedural History

Plaintiffs brought this action on August 28, 2020, alleging legal malpractice. Dkt. 1. The case was reassigned to the undersigned on September 29, 2020. *See* Notice of Case Reassignment dated Sept. 29, 2020. The Court ordered Plaintiffs to amend their complaint on December 23, 2020 due to Plaintiffs' failure to adequately allege the citizenship of each party. Dkt. 18. Plaintiffs filed an amended complaint on December 30, 2020. Dkt. 19. The Court again ordered Plaintiffs

to amend their complaint for still not sufficiently pleading jurisdiction in compliance with the Court's previous order.  Dkt. 37.  After Plaintiffs filed the Second Amended Complaint on October 21, 2021, Dkt. 38, Peyrot moved to dismiss for failure to state a claim on November 4, 2021, Dkts. 47-49, and the Williams Defendants moved to dismiss for failure to state a claim and lack of subject matter jurisdiction on November 26, 2021, Dkts. 54-55.  On September 22, 2022, the Court found that it has diversity jurisdiction pursuant to 28 U.S.C. § 1332, but granted both motions to dismiss for failure to state a claim, with leave for Plaintiffs to amend the complaint one more time to cure the pleading deficiencies identified.  *Breuninger*, 2022 WL 4384000, at *7-8.

Plaintiffs then filed the Third Amended Complaint on October 21, 2022, and refiled it on October 24, 2022 due to a filing error.  Dkts. 69-70.  All Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Peyrot moved to dismiss on November 30, 2022.  Dkts. 81, 82 ("Peyrot Motion to Dismiss").  The Williams Defendants attempted to file a motion to dismiss and a motion for sanctions under 28 U.S.C. § 1927 that same day, Dkts. 83-86, but due to filing errors they refiled these papers on December 21, 2022, Dkts. 96, 97 ("Williams Motion to Dismiss"), 100, 101 ("Section 1927 Motion").  The Williams Defendants also filed an additional motion for sanctions under Federal Rule of Civil Procedure 11 on December 1, 2022, Dkts. 87, 88 ("Rule 11 Motion"), 90, which for some reason they refiled on December 21, 2022, Dkts. 98-99.  On December 14, 2022, Plaintiffs opposed both motions to dismiss, Dkts. 91-92, and both motions for sanctions, Dkts. 93, 94 ("Sanctions Opposition").  Peyrot filed its reply on December 20, 2022.  Dkt. 95.  The Williams Defendants replied in support of their motion to dismiss and their motion for sanctions under 28 U.S.C. § 1927 on December 21, 2022.  Dkts. 102-103.

## II.  Legal Standards

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citation omitted), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009) (citation omitted).

### B.      Sanctions Pursuant to Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).[2]  A court's determination of whether

---

[2] The 1993 Advisory Committee Note to Rule 11 lays out several possible considerations for deciding whether to impose sanctions: (1) "[w]hether the improper conduct was willful, or

Rule 11 sanctions are appropriate entails an analysis "distinct from the underlying merits of a claim." *Lenzo v. City of New York*, No. 21 Civ. 306 (JMF), 2022 WL 4621440, at \*2 (S.D.N.Y. Sept. 30, 2022) (internal quotation marks omitted).

Given the "concern for encouraging zealous advocacy," "[c]ourts maintain a high bar for establishing a Rule 11 violation." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Rule 11 sanctions are appropriate only after "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (internal quotation marks omitted). A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Manhattan Enter. Grp., LLC v. Higgins*, No. 18 Civ. 6396 (VSB), 2019 WL 4601524, at \*2 (S.D.N.Y. Sept. 22, 2019) (internal quotation marks omitted), *aff'd*, 816 F. App'x 512 (2d Cir. 2020). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)); *accord Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 460 (S.D.N.Y. 2005) (explaining that sanctions are appropriate under Rule 11 only "where it

---

negligent;" (2) "whether it was part of a pattern of activity, or an isolated event;" (3) "whether it infected the entire pleading, or only one particular count or defense;" (4) "whether the person has engaged in similar conduct in other litigation;" (5) "whether it was intended to injure;" (6) "what effect it had on the litigation process in time or expense;" (7) "whether the responsible person is trained in the law;" (7) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;" and (8) "what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment; *see VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*, No. 20 Civ. 4394 (JPC), 2021 WL 3913555, at \*15 (S.D.N.Y. Sept. 1, 2021), *aff'd*, No. 21-2465-cv, 2022 WL 2133780 (2d Cir. June 14, 2022).

is patently clear that a claim has absolutely no chance of success" (quoting *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994))), *aff'd*, 180 F. App'x 223 (2d Cir. 2006).  And even if the Court finds that a party moving under Rule 11 has met this high bar, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

## C.    Sanctions Pursuant to 28 U.S.C. § 1927

Under section 1927, a court may impose sanctions against an attorney when such attorney "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  "[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 49 (S.D.N.Y. 1993) (internal quotation marks omitted).  This requires a district court to find clear evidence that "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purpose such as harassment or delay." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999); *see also Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143-44 (2d Cir. 2012).

"[A] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co.*, 194 F.3d at 337 (internal quotation marks omitted).  The relevant inquiry is whether a reasonable attorney "could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Id.* (internal quotation marks omitted).  An action is taken in bad faith when it is "motivated by improper purposes such as harassment or delay." *Id.* at 336.  "Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the

litigation." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (internal quotation marks omitted).  While "[b]ad faith can be inferred when the actions taken are . . . completely without merit," *Schlaifer Nance & Co.*, 194 F.3d at 338 (internal quotation marks omitted), the Second Circuit has declined to hold "that a frivolous position may be equated with an improper purpose" as "[s]uch a simple equation would turn the two-part standard into a one-part standard," *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 391 (2d Cir. 1985); *see also Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (reversing an award of sanctions where "the Court's conclusory determination that [the plaintiff's] motion was filed in bad faith rested almost entirely on its lack of merit").  The Second Circuit has "interpreted the bad faith standard restrictively[] '[t]o ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims.'"  *Eisemann*, 204 F.3d at 396 (quoting *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)).

"A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings."  *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).  Even where the standard is met, "[t]he Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority."  *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017); *see also Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135 (SAS), 2003 WL 22434153, at *7 (S.D.N.Y. Oct. 24, 2003) (finding that "§ 1927 by its terms ('*may* be required') confides an award of fees against counsel to the Court's discretion" (internal quotation marks omitted)).

## III.  Discussion

### A.    Motions to Dismiss

To plead a legal malpractice claim under New York law, a "plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citing *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 573 N.Y.S.2d 981 (App. Div. 1991), *aff'd*, 605 N.E.2d 318 (N.Y. 1992)).  The Williams Defendants and Peyrot make the same arguments in favor of their motion to dismiss the Third Amended Complaint: first, that Plaintiffs have failed to allege an attorney-client relationship between Williams and ITGA, Peyrot Motion to Dismiss at 6-8; Williams Motion to Dismiss at 9-13, and second, that Plaintiffs have failed to allege actual damages, Peyrot Motion to Dismiss at 8-9; Williams Motion to Dismiss at 13-15.[3]

### 1.      Attorney-Client Relationship

Defendants assert that Plaintiffs fail to state a claim for legal malpractice because ITGA was not Williams's client.  Peyrot Motion to Dismiss at 6-8; Williams Motion to Dismiss at 9-10.  Such a conclusion was part of the Court's holding in its September 22, 2022 Opinion and Order dismissing the Second Amended Complaint, because the allegations in that pleading did not

---

[3] The Williams Defendants also appear to argue, in passing and only in footnotes, first that Jane Doe Williams should be terminated from the action because the "TAC does not identify the benefit that Jane Doe Williams received," Williams Motion to Dismiss at 13 n.2, and second that any "new facts on damages" do not "relate back" to previous allegations, *id.* at 15 n.3.  The Court need "not evaluate arguments that are so drastically underdeveloped, particularly when they are raised only in a footnote."  *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015); *see also Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 314 (S.D.N.Y.) ("[B]ecause the arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them."), *aff'd*, 626 F. App'x 20 (2d Cir. 2015); *Sec. & Exch. Comm'n v. Allaire*, No. 03 Civ. 4087 (DLC), 2019 WL 6114484, at *3 n.1 (S.D.N.Y. Nov. 18, 2019) ("An argument mentioned only in a footnote is not adequately raised and need not be considered."), *aff'd sub nom. Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166 (2d Cir. 2021).

establish an attorney-client relationship under New York law. *Breuninger*, 2022 WL 4384000, at

\*5-6. As discussed below, however, the allegations in the Third Amended Complaint are

meaningfully different and, when credited, sufficiently establish an attorney-client relationship

between Williams and ITGA.[4]

In New York, the existence of an attorney-client relationship is generally a necessary

element of a cause of action for legal malpractice. *Block v. Brecher, Fishman, Feit, Heller, Rubin*

*& Tannenbaum*, 753 N.Y.S.2d 84, 85 (App. Div. 2003) (relying on "the general rule that, absent

fraud, collusion, malicious acts or other special circumstances, an attorney is not liable for

professional negligence to third parties not in privity"). While a formal written contract is not

required to form an attorney-client relationship, "the existence of such a relationship depends upon

whether there is contractual privity and a legally binding contract." *Pope v. Rice,* No. 04 Civ. 4171

(DLC), 2005 WL 613085, at \*6 (S.D.N.Y. Mar. 14, 2005). In particular, the existence of an

attorney-client relationship depends on a variety of factors including:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in an aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable.

*Id.* at \*6 (quoting *M.J. Woods, Inc. v. Conopco, Inc.,* 271 F. Supp. 2d 576, 585 (S.D.N.Y. 2003)).

In conducting this inquiry when no written agreement exists, a court examines "the words and

actions of the parties to ascertain if an attorney-client relationship was formed." *Noble v. Mt.*

*Olivet Church, Inc.*, No. 18 Civ. 7871 (NRB), 2021 WL 930626, at \*3 (S.D.N.Y. Mar. 11, 2021)

---

[4] Because Breuninger brings his claim on behalf of ITGA, *see* Complaint ¶ 88, the Court analyzes only Williams's relationship with ITGA.

(internal quotation marks omitted).  "For example, courts may consider whether the client and attorney engaged in activity in furtherance of the objective of the retention and whether the attorney provided legal advice and publicly held himself out as an attorney to the purported client." *Id.* (internal quotation marks and citations omitted).

The Court previously determined that the Second Amended Complaint's allegations failed to establish an attorney-client relationship because the allegations, even when fully credited, showed only that Williams filed a bankruptcy petition on behalf of ITGA and listed himself as a representative on that petition.  *Breuninger*, 2022 WL 4384000, at *5-6.  Though this activity satisfied the fourth *Pope* factor, it was insufficient on its own to show the formation of an attorney-client relationship.  *Id.* at *6.

While Plaintiffs' Third Amended Complaint still does not allege a written contract, its allegations are significantly more robust.  Plaintiffs admit that ITGA did not pay Williams to file the bankruptcy petition, TAC ¶ 43, but it appears that this was because Plaintiffs believed that Howard would pay Williams for his representation of ITGA, *id.* ¶ 44.  As alleged, Williams thus appears to have provided his legal services either gratuitously or in accordance with the belief that Howard would pay for those services.  Next, as alleged, Williams did actually represent ITGA in the bankruptcy both by filing the initial petition after receiving direction from Breuninger, *id.* ¶¶ 45-46, 52, and then by filing a motion to reinstate the petition, *id.* ¶ 71, thereby acting in furtherance of the objective of the alleged retention.  Williams also allegedly provided legal advice to Breuninger related to the petition.  *Id.* ¶ 49 (alleging that "[b]ased on the advice of Defendant T. Edward Williams," Breuninger authorized Williams to sign the Chapter 11 petition on Breuninger's behalf as ITGA's authorized representative).  These alleged "words and actions" of the parties tend to show that some attorney-client relationship was formed between Williams and

13

ITGA.  Adding force to that conclusion is Breuninger's alleged subjective belief that Williams was

ITGA's bankruptcy attorney, *id.* ¶ 50, which appears to have been a reasonable belief were one to

credit the interactions Breuninger and Williams allegedly shared prior to Williams filing the

petition, including two phone calls with one involving Williams requesting that Breuninger sign

ITGA's Chapter 11 petition, *id.* ¶¶ 45, 47, Williams's receipt of information from Breuninger that

was necessary to file the bankruptcy petition, *id.* ¶ 46, and Williams sending Breuninger the

petition for Breuninger's review and approval before filing, *id.* ¶ 48.  In short, while not all of the

*Pope* factors are satisfied, it is difficult to see why the parties, including Williams, would have

acted this way had they not believed that Williams was ITGA's bankruptcy attorney.  Based on

these allegations, the Court determines that Plaintiffs have adequately alleged an attorney-client

relationship with Williams.[5]

---

[5] Some case law indicates that the attorney-client relationship requirement can alternatively be satisfied by the "near privity" doctrine, which provides for liability from a "relationship approaching privity or other special circumstance."  *Learning Annex, L.P. v. Blank Rome LLP*, 966 N.Y.S.2d 78, 80 (App. Div. 2013) (citation omitted).  Near privity is established when (1) an attorney is aware that his or her services will be used for a specific purpose; (2) the plaintiff relies on those services; and (3) the attorney engaged in some conduct evincing some understanding of the plaintiff's reliance. *See Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 787 N.Y.S.2d 15, 18 (App. Div. 2004).

As just discussed, the Court finds that the Third Amended Complaint sufficiently alleges a traditional attorney-client relationship between Williams and ITGA.  But had the allegations not, it appears that they would have satisfied the requirements for near privity.  First, Plaintiffs have alleged that Williams understood that his services were being used by ITGA for the purposes of filing a bankruptcy petition, as made clear by the fact that Williams had two phone calls with Breuninger as the representative of ITGA in preparation for filing the bankruptcy petition, sought from Breuninger information necessary to file the petition, and requested that Breuninger sign the petition, TAC ¶¶ 45-47, and as further indicated by the allegation that Williams sent the petition to Breuninger to review before Breuninger authorized his signature, *id.* ¶¶ 48-49.  Second, Plaintiffs adequately allege that ITGA relied on Williams to file the petition, because had he not done so they would have sought other bankruptcy counsel to file it.  *Id.* ¶ 51.  And finally, Williams acted in understanding of that reliance by filing the petition itself:  Plaintiffs allege that, when filing the petition, Williams knew that ITGA would lose Club West in a foreclosure unless he provided his services.  *Id.* ¶¶ 52-53.  Williams' understanding of ITGA's reliance on his services

Defendants' arguments to the contrary are not persuasive. For instance, the Williams Defendants point to case law indicating that a subjective belief alone cannot form an attorney-client relationship, Williams Motion to Dismiss at 10-11, and that the payment of invoices alone likewise cannot establish such a relationship, *id.* at 11. But Plaintiffs admit that they did not pay Williams, and they rely on more than just a subjective belief, alleging Williams's direct actions taken as a representative of ITGA as outlined above. The Court therefore concludes, based on the allegations in the Third Amended Complaint, which must be credited at this motion to dismiss stage, that Plaintiffs sufficiently plead an attorney-client relationship.[6]

### 2.  Actual Damages

In their previous motions to dismiss the Second Amended Complaint, Defendants also successfully argued that Plaintiffs' alleged damages were too speculative to sustain a claim for legal malpractice. At the time, Plaintiffs' theory of damages was that "Defendants Williams and Peyrot Law Firm's breach of their duties of care owed to Plaintiff ITGA caused Plaintiff ITGA to lose Club West to foreclosure proceedings resulting in the loss of the $2,000,000 contract with

---

is further shown by the allegation that he filed an "Emergency Motion to Reinstate both the Case and the Automatic Stay" on ITGA's behalf after the bankruptcy petition was dismissed. *Id.* ¶ 71.

The Williams Defendants entirely fail to address the near-privity doctrine, and Peyrot offers no persuasive argument against the doctrine's applicability, with its entire argument on this front reading: "Third parties, not ITGA, allegedly directed Williams to file the bankruptcy petition. In addition, there are no allegations that Plaintiff relied on the filings." Peyrot Motion to Dismiss at 8.

[6] To the extent that the Williams Defendants seek to argue, based on their citation to *TPTCC NY, Inc. v. Radiation Therapy Servs.*, 784 F. Supp. 2d 485 (S.D.N.Y.), *aff'd in part and rev'd in part*, 453 F. App'x 105 (2d Cir. 2011) (cited at Williams Motion at 12), that Williams could not have been ITGA's attorney because he was also an attorney for Howard, the Court notes first that the state-law portion of that case was reversed by the Second Circuit, *TPTCC NY*, 453 F. App'x at 107, and second that there is a considerable conceptual difference between an entity's belief that its counsel also represents other clients, as Plaintiffs allege they did, and one company believing that it could retain the employed general counsel of another company to serve as its attorney, as the complaint in *TPTCC NY* alleged.

Howard, Ultegra, and/or Dab Drilling." Dkt. 38 ¶ 89. The Court determined that the realization of the benefit for whose loss damages were sought "depended entirely on the actions of a third party," namely, Howard, Ultegra, or Dab Drilling entering into the contract, and so the damages, as alleged, were too speculative to support Plaintiffs' claim. *Breuninger*, 2022 WL 4384000, at *7. In the Third Amended Complaint, Plaintiffs have amended their theory of damages and now state that Defendants' malpractice caused not the loss of a contract to sell Club West for $2,000,000, but the loss of Club West itself. TAC ¶¶ 101-102. Plaintiffs value that loss as the difference between the amount of debt owed for Club West, $1,300,000, and the "reasonable value of Club West which Plaintiff ITGA reasonably believes was $2,000,000." *Id.* ¶ 102. In other words, Plaintiffs seek to recover the $700,000 which they assert would have been the equity value of Club West had they continued to hold the asset.

Under New York law, "[m]ere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice." *Plymouth Org., Inc. v. Silverman, Collura & Chernis, P.C.,* 799 N.Y.S.2d 813, 814 (App. Div. 2005) (internal quotation marks omitted); *see also Holschauer v. Fisher*, 772 N.Y.S.2d 836, 837 (App. Div. 2004) ("Conclusory allegations of damages or injuries predicated on speculation cannot suffice for a malpractice action." (citation omitted)). Instead, the "plaintiff must prove that it was the attorney's negligence which proximately caused the *actual and ascertainable damages* that resulted." *Plymouth Org.,* 799 N.Y.S.2d at 814-15 (emphasis added) (internal quotation marks omitted).

Defendants fail to appreciate that Plaintiffs' alleged losses are no longer contingent on the purchase of Club West by a third party.[7] The theory of damages is simple: prior to the malpractice,

---

[7] The Court acknowledges that Plaintiffs' continued possession of their asset would have been dependent on a successful bankruptcy reorganization. But this type of contingency is

Plaintiffs held an asset with a value to them of $700,000; after that malpractice, Plaintiffs no longer held that asset.  While a third party may have been necessary to convert the asset into cash, the loss of the asset itself is sufficient to allege damages.  Proceedings in this case may determine that the actual value of Club West was lower than $2,000,000 such that the value minus the debt attached to the asset was lower than $700,000 or even negative, but that is a question of fact not appropriate for resolution at this stage.

\* \* \*

Therefore, the Court denies both motions to dismiss the Third Amended Complaint.

**B.      Motions for Sanctions**

The Williams Defendants additionally seek sanctions from Plaintiffs and their attorney under both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

**1.      Sanctions Pursuant to Federal Rule of Civil Procedure 11**

The Williams Defendants present three arguments in support of their motion for sanctions under Rule 11.  First, they argue that Plaintiffs' claims are "frivolous, groundless, and not warranted by existing law," because Plaintiffs have failed to state a claim for legal malpractice. Rule 11 Motion at 8.  Second, they claim that Plaintiffs cannot state a claim for malpractice for the additional reason that "ITGA had no chance at a successful reorganization," *id.* at 9-10 (capitalization removed), an assertion supported by an affidavit from Williams filed in support of the motion, Dkt. 90.  And third, they argue that Plaintiffs have lied to the Court in their allegations

---

frequently an aspect of legal malpractice cases in which plaintiffs must show that but for malpractice they would have been successful in underlying court actions.  *See Collins v. Felder*, 251 F. Supp. 3d 634, 635 (S.D.N.Y. 2017) ("To prevail on a claim of attorney malpractice in the conduct of a particular case, the plaintiff must establish that—absent the malpractice—he would have won the case.").  So while as part of their case Plaintiffs will need to demonstrate that they would have successfully been able to retain Club West through bankruptcy proceedings, such a requirement does not render their damages allegations too speculative.

in the Third Amended Complaint regarding Williams's interactions with Breuninger, citing Breuninger's deposition in another litigation as support. Rule 11 Motion at 11-13.

As for the first argument, the Court has already rejected the motions to dismiss for failure to state a claim and so has determined that the Third Amended Complaint is not frivolous. As for the second and third arguments, Plaintiffs disagree that Breuninger's deposition reveals any lies in the allegations of the Third Amended Complaint and that ITGA's bankruptcy plan would not have been approved. Sanctions Opposition at 4-6. Resolving those factual disputes would be equivalent to resolving the factual disputes that make up this case. As such "the Court declines to award sanctions on the basis of a factual dispute that need not be resolved at this early stage." *JM Holdings 1 LLC v. Quarters Holding GmbH*, No. 20 Civ. 3480 (JPO), 2021 WL 860516, at *8 (S.D.N.Y. Mar. 8, 2021); *see also In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 331 (S.D.N.Y. 2013) ("[A] pre-trial motion for sanctions is not the appropriate vehicle to test the truth or falsity of allegations in a complaint . . . . If I were to accept this claim and sanction Plaintiffs, it would be tantamount to discrediting the truth of these allegations. Such a finding, if warranted, is and should remain in the discretion of the fact finder. A motion for sanctions cannot serve as an end-run around the fact finder's exclusive role to resolve factual disputes.").

### 2. Sanctions Pursuant to 28 U.S.C. § 1927

Finally, the Court declines to award the Williams Defendants sanctions under section 1927 because the Court has denied their motion to dismiss the Third Amended Complaint. Having allowed the Third Amended Complaint to stand, the Court does not now determine that filing it was frivolous. Moreover, because the Williams Defendants' argument for bad faith is grounded in the claim that the Third Amended Complaint was frivolous, Section 1927 Motion at 4, the Court determines that the Third Amended Complaint was not filed in bad faith. As for the Williams Defendants' assertion that Plaintiffs have lied to the Court, *id.* at 5-7, the Court has already

addressed this argument *supra* in its discussion of Rule 11 sanctions, finding it premature to resolve at this stage of the litigation.

* * *

Therefore, the Williams Defendants' motions for sanctions are denied in their entirety. However, this denial is without prejudice.  In the event that the Williams Defendants can prove a basis for sanctions after the close of discovery, they may seek leave to refile at that point.

### IV.  Conclusion

For the reasons stated above, the Court denies both motions to dismiss and further denies the motions for sanctions without prejudice.  The stay of discovery is lifted.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 81, 87, 96, 98, and 100.

SO ORDERED.

Dated: June 27, 2023
   New York, New York

         JOHN P. CRONAN
       United States District Judge