UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                    :

RICHARD BREUNINGER *et al.*,          :

                        :

                 Plaintiffs,     :          20 Civ. 7033 (JPC)

                        :

       -v-                  :

                        :         <u>OPINION AND ORDER</u>

T. EDWARD WILLIAMS *et al.*,       :

                        :

               Defendants.    :

                        :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiffs Richard Breuninger and ITGA, LLC, along with Third-Party Defendants Mick

Levin, Mick Levin, PLC, John Robertson II, Jane Doe (or John Doe) Levin, Jane Doe (or John

Doe) Robertson, and Jane Doe Breuninger (collectively, the "Counterclaim Defendants") move to

dismiss all six counterclaims asserted against them by Defendants and Counter-Claimants T.

Edward Williams and Jane Doe Williams (collectively, the "Counter-Claimants").[1] Counterclaim

Defendants move to dismiss for both lack of personal jurisdiction under Federal Rule of Civil

---

[1] Although the operative Supplemental Counterclaims list Defendant Peyrot and Associates, P.C. ("Peyrot") as a Counter-Claimant, *see* Dkt. 262 ("Suppl. Counterclaims") at 1, Peyrot separately answered the Third Amended Complaint, Dkt. 70 ("TAC"), and did not assert any counterclaims along with its answer, *see* Dkt. 107. The Court more generally cannot discern anything from the record that would indicate that Peyrot joins in these counterclaims.

The Court also fails to understand why there continue to be John and Jane Doe parties in this action, given that the parties and their counsel presumably know their spouses' names. *Cf. Cotto v. City of New York*, Nos. 15 Civ. 9132 (RWS), 16 Civ. 226 (RWS), 2017 WL 3476045, at *5 (S.D.N.Y. Aug. 11, 2017) ("[A] plaintiff may not designate a party as 'John Doe' under [New York law] if he has actual knowledge of the party's identity."), *aff'd*, 803 F. App'x 500 (2d Cir. 2020). Accordingly, within 14 days the parties must (1) amend the operative pleadings for the limited purpose of naming these parties, (2) dismiss these parties from this action, or (3) move to litigate with these parties under pseudonyms, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008).

Procedure 12(b)(2) and failure to state a claim under Rule 12(b)(6).  For the reasons that follow, the Court grants Counterclaim Defendants' motion in part and denies it in part, ultimately dismissing all of Counter-Claimants' causes of action with prejudice except for their unjust enrichment and quantum meruit claims.

## I.  Background

### A.  Facts[2]

This legal malpractice case—now approaching its fourth year on the docket—has been through many twists and turns, including two motions to dismiss and a slew of discovery disputes. *See Breuninger v. Williams*, No. 20 Civ. 7033 (JPC), 2023 WL 4211030 (S.D.N.Y. June 27, 2023) ("*Breuninger II*") (opinion on Defendants' motion to dismiss the TAC); *Breuninger v. Williams*, No. 20 Civ. 7033 (JPC), 2022 WL 4384000 (S.D.N.Y. Sept. 22, 2022) ("*Breuninger I*") (opinion on Defendants' motion to dismiss the Second Amended Complaint ("SAC")); *see also Breuninger v. Williams*, No. 20 Civ. 7033 (JPC) (RWL), 2024 WL 2783546 (S.D.N.Y. May 28, 2024) (detailing a sample of recent discovery disputes).  This Opinion and Order concerns the latest chapter: six causes of action brought by Counter-Claimants in their Supplemental Counterclaims. With one exception discussed below, these causes of action collectively accuse Counterclaim Defendants of violating a host of legal obligations and ethical duties by having brought this case. In sum, Counter-Claimants accuse Counterclaim Defendants of "ma[king] up the legal malpractice claim because they believed that if they accused . . . Williams . . . of malpractice, the law firms with which . . . Williams . . . was a part would assume that a young, black attorney had committed

---

[2] Except where expressly noted otherwise, the following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Supplemental Counterclaims, and the documents incorporated therein by reference.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

legal malpractice, and they would pay Plaintiffs and his [sic] attorneys $2 million dollars."  Suppl. Counterclaims ¶ 1.

The core events in 2017 and 2018 that underpin this lawsuit were recited in the *Breuninger I* and *Breuninger II* opinions, but the Court will briefly summarize Counter-Claimants' version of events, as the allegations differ in certain respects from those of the SAC and TAC.  *See Breuninger II*, 2023 WL 4211030, at *1-3; *Breuninger I*, 2022 WL 4384000, at *1-2.   On November 28, 2017, ITGA—an entity affiliated with Breuninger—"entered into a Deed of Trust and Assignment of Rents to purchase Club West for $1.3 million dollars."  Suppl. Counterclaims ¶ 35; *see id.* ¶ 21.[3]   In order to finance this purchase, ITGA "entered into a seller-carry arrangement, whereby the seller of Club West agreed to carry [a] $1.3 million dollar note at a 5% interest rate."  *Id.* ¶ 37.  "ITGA was to make payments of $35,000.00 each month [on the note], plus the 5% interest."  *Id.* ¶ 38.  Breuninger apparently claimed that ITGA made the first four monthly payments on the note—namely, from December 2017 to March 2018—"but could make no more payments after that."  *Id.* ¶ 39.

A broker then introduced Breuninger to Muhammad Howard in June 2018.  *Id.* ¶ 46.  "Howard operated Ultegra Financial Partners, Inc., a financial services firm that served as a broker and found loans from hard money lenders."  *Id.* ¶ 47.  At the time, Williams "represented Ultegra

---

[3] The Supplemental Counterclaims state that ITGA "is an Arizona limited liability company owned and operated by Muhammad Howard and entities owned by Muhammad Howard," *id.* ¶ 7, but also allege that Breuninger testified in this matter partly "in his capacity as representative of ITGA," *id.* ¶ 254.  In Howard's affidavit, which was attached to the original counterclaims and cited extensively in the Supplemental Counterclaims, Howard declared that he purchased a 90% share in ITGA through an entity affiliated with his business in August 2018 and paid the purchase price to Breuninger.  Dkt. 184-1 ("Howard Affidavit") ¶¶ 3, 6-7; *Davis v. Metro N. Commuter R.R.*, No. 23-1041, 2024 WL 1434284, at *2 (2d Cir. Apr. 3, 2024) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (internal quotation marks omitted)).

in some of its transactions." *Id.* ¶ 49.  Breuninger apparently approached Howard about obtaining

a bridge loan for Club West that would allow the golf course to "get through some difficulty until

[it] opened the following [w]inter and [s]pring." *Id.* ¶ 50.  However, Breuninger never provided

Ultegra with the requested financial documentation or proof of ownership of ITGA or Club West,

so Howard's firm never sought financing on ITGA's behalf or gave financing to ITGA.  *See id.*

¶¶ 51-54.  The Supplemental Counterclaims allege that "Ultegra ceased doing business with ITGA

and Breuninger by September 7, 2018" and that Howard instructed Williams "to stop performing

work on all matters related to ITGA" three days later.  *Id.* ¶¶ 56-57; *see id.* ¶ 319.  Counter-

Claimants allege that Howard and ITGA owe Williams $137,500.45 for Williams's work on this

project. *Id.* ¶ 314.

At their core, the Supplemental Counterclaims lodge Counter-Claimants' objections to

Plaintiffs' and their counsel's course of dealing in the aftermath of these events.   Counter-

Claimants allege that, "between December 2018 and July 2019, . . . Breuninger was in dire straits

and needed money." *Id.* ¶ 59.  Breuninger's sister, who is an attorney, recommended Levin and

Robertson to Breuninger after he asked her "about how a big firm would respond to a legal

malpractice claim against one of its associate attorneys." *Id.* ¶¶ 62, 64.  Breuninger allegedly told

Levin and Robertson "that the attorney who was helping Howard [presumably with the ITGA-

related matters] worked at a large law firm, and he thought there may be a chance to get some

money from that law firm's insurance" and asked them "whether they thought about how much

fight they needed to put up to get a large law firm to settle a legal malpractice claim." *Id.* ¶¶ 67-

68.  Levin and Robertson allegedly replied that "they thought they could make out a case for legal

malpractice and that they believed that [Howard's lawyer's][4] firm would pay to settle the claim as soon as they saw a demand letter." *Id.* ¶ 69.   In the Supplemental Counterclaims' most inflammatory accusation, Counter-Claimants allege that "Levin and Robertson told Breuninger that the claim was stronger given that the lawyer in question was black . . . [since] the predominantly white firms with which [Williams] was associated would not want to fight the matter and would settle the matter quickly." *Id.* ¶ 70.   Although Counter-Claimants cite an October 16, 2023 affidavit from Howard for this assertion, it bears mention that Howard's recollection is slightly different than the Supplemental Counterclaims' allegations.   Howard declared that, per Breuninger's recounting of the story to him, Levin and Robertson "told [Breuninger that] the strength of the claim did not matter because [the firm] would settle the lawsuit once they knew one of its young black lawyers had made a mistake" and that Williams "would not fight such a suit because he was young and likely could not afford to do so."   Howard Affidavit ¶¶ 40-41.

In any case, Levin and Robertson sent a demand letter for Breuninger's malpractice claim to Williams and the law firms with which he was associated on August 5, 2019.   Suppl. Counterclaims ¶ 80.   Counter-Claimants allege that Levin and Robertson did so despite knowing that Breuninger and ITGA "did not have a claim for malpractice," "did not have interest in Club West," and "had not actually purchased Club West."   *Id.* ¶¶ 81-83.   Levin and Robertson then proceeded to file lawsuits based on this claim in this Court—resulting in the instant action—in addition to separate suits in Denver District Court in Colorado and Maricopa County Superior Court in Arizona.   *Id.* ¶ 85.   Some combination of Breuninger and ITGA apparently also separately

---

[4] The Supplemental Counterclaims literally allege here that Levin and Robertson "believed that Moe lawyers [sic] firm would pay to settle the claim as soon as they saw a demand letter." Suppl. Counterclaims ¶ 69.  While the Counter-Claimants neglect to otherwise identify whom they are referring to by "Moe," the Court assumes they are referring to Muhammed Howard.

sued Howard and Ultegra in Arizona; this lawsuit resulted in a default judgment being entered in the amount of $2,000,000 against Howard on August 24, 2021.  *See id.* ¶¶ 268-272.

Counter-Claimants generally fault Counterclaim Defendants for instituting a "sham lawsuit [that] has forced [Williams] to incur $687,298.22 since 2019," *id.* ¶ 5, although at another point Counter-Claimants allege that Williams's loss amount from this action is $578,093.23, *id.* ¶ 315.[5]

### B. Procedural History

The procedural history of this case is explained in detail in *Breuninger II* and, at this juncture, the Court only recites the travel of this case from that decision onward.  *See* 2023 WL 4211030, at *3.  After the Court denied Defendants' motion to dismiss the TAC, *see id.* at *8, Counter-Claimants then answered the TAC and filed counterclaims on July 25, 2023.[6]  Dkt. 126. On August 28, 2023, Breuninger and ITGA filed a letter motion in anticipation of a motion to dismiss the counterclaims asserted against them.  Dkt. 143.  While the Court initially set a briefing schedule on the anticipated motion on August 29, 2023, Dkt. 147, Counter-Claimants successfully sought Plaintiffs' consent to amend the counterclaims before Plaintiffs' motion to dismiss was fully briefed, Dkt. 182.  Counter-Claimants proceeded to file an amended answer and counterclaims on October 16, 2023.  Dkts. 183-184.  Counterclaim Defendants then filed a letter motion in anticipation of motions to dismiss the amended counterclaims.  Dkts. 199-200, 202.  The Court then permitted Counterclaim Defendants to file one combined motion to dismiss on November 21, 2023.  Dkt. 218.  Counterclaim Defendants duly filed their motion on December

---

[5] Counter-Claimants also clarify with respect to the $687,298.22 figure that it excludes "damages from defamatory statements ITGA LLC and its attorneys made about . . . Williams and [also] . . . ITGA LLC's unjust enrichment from legal services that [Williams] provided from which ITGA LLC has expressly acknowledged it benefited."  Suppl. Counterclaims ¶ 5.

[6] Counter-Claimants had filed this document twice by that point but refiled it due to filing errors each time.  *See* Dkts. 113, 120.

21, 2023.  Dkt. 231 ("Motion").  Counter-Claimants filed their opposition on January 8, 2024, Dkt. 238 ("Opposition"), and Counterclaim Defendants filed their reply on January 12, 2024, Dkt. 239.  However, Counter-Claimants then filed a "notice" of their intent to supplement their counterclaims pursuant to Federal Rule of Civil Procedure 15(d) on March 19, 2024, just over two months after the motion to dismiss was fully briefed.  Dkt. 254.  The Honorable Robert W. Lehrburger—to whom this case is referred for general pretrial supervision, Dkt. 105—granted Counter-Claimants leave to do so.  Dkt. 261.  Counter-Claimants then filed the operative Supplemental Counterclaims on May 6, 2024.  Dkt. 262.  Counterclaim Defendants declined to withdraw or amend their pending motion to dismiss after having reviewed Counter-Claimants' new filing.  Dkt. 264.  Given that decision, the Court applies the parties' pre-supplement briefing to the Supplemental Counterclaims.

As noted above, Counterclaim Defendants mount two challenges to the Supplemental Counterclaims: a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and a motion to dismiss for failure to state a claim under Rule 12(b)(6).  The Court discusses each in turn.[7]

## II.  Rule 12(b)(2) Motion

"To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists.  Such a showing entails making legally sufficient

---

[7] On December 23, 2023, Williams filed a letter motion to strike Counterclaim Defendants' motion to dismiss, pointing to the fact that Counterclaim Defendants violated this District's Local Civil Rule 7.1 by not separately filing a notice of motion and memorandum of law.  Dkt. 232. While Counterclaim Defendants are reminded of their obligation to comply with this Court's Local Rules, the Court denies the motion to strike because this violation does not appear to have resulted from bad faith.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Okla. Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A. Institución de Banca Múltiple*, 92 F.4th 450, 455-56 (2d Cir. 2024) (cleaned up).

Counter-Claimants draw distinctions among three groups of Counterclaim Defendants: (1) Breuninger and ITGA, the Plaintiffs in this action; (2) Levin and Mick Levin, PLC, who serve as Plaintiffs' counsel in this action; and (3) Robertson, who at least formally is only a Third-Party Defendant in this action. *See* Opposition at 6-11.

As to Breuninger and ITGA, the Court credits Counter-Claimants' argument that their status as Plaintiffs in this action undercuts the notion that the Court cannot exercise personal jurisdiction over them for purposes of the Counterclaims. It is well established that "[r]egardless of whether a defendant's counterclaim is compulsory or permissive, a plaintiff 'cannot object that the court lacks personal jurisdiction' to adjudicate a counterclaim against the plaintiff." *Prose Shipping Ltd. v. Integr8 Fuels Inc.*, No. 21 Civ. 341 (VSB), 2022 WL 280456, at *2 (S.D.N.Y. Jan. 31, 2022) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1424 (3d ed. 2021)); *see V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022) ("[A] plaintiff bringing suit in a forum 'submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants.'" (quoting *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932))). The Court thus denies the Rule 12(b)(2) motion with respect to Breuninger and ITGA.

The Court declines to reach the other Counterclaim Defendants' Rule 12(b)(2) motion, since—as detailed below—the Court ultimately dismisses all causes of action against Levin, Mick

Levin, PLC, and Robertson for failure to state a claim. *See Fratelli BVBA v. APM Music Servs., LLC*, No. 20 Civ. 6208 (JPC), 2021 WL 4429417, at *6 n.4 (S.D.N.Y. Sept. 27, 2021) ("Because dismissal of the unjust enrichment claims terminates All Parts from this action, the Court does not address its argument for dismissal for lack of personal jurisdiction.").

### III.  Rule 12(b)(6) Motion

"In evaluating a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), courts apply the same standard as a motion to dismiss a complaint." *Wells Fargo Bank, Nat'l Ass'n v. GC SHL, LLC*, No. 21 Civ. 8940 (JPO), 2022 WL 3599131, at *2 (S.D.N.Y. Aug. 23, 2022) (internal quotation marks omitted).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible "when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [counterdefendant] is liable for the misconduct alleged." *Id.*  A counterclaim's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the [counterclaim] and draw[] all inferences in the [counterclaimant]'s favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

Counterclaim Defendants move to dismiss all six counterclaims against them; namely, Count One for defamation *per se* seemingly against all Counterclaim Defendants, Suppl. Counterclaims ¶¶ 323-329; Count Two for abuse of process against all Counterclaim Defendants, *id.* ¶¶ 330-334; Count Three for violations of Section 487 of the New York Judiciary Law against

Levin and Robertson, *id.* ¶¶ 335-345; Count Four for unjust enrichment/quantum meruit against ITGA and Breuninger, *id.* ¶¶ 346-349; Count Five for civil conspiracy against all Counterclaim Defendants, *id.* ¶¶ 350-352; and Count Six for negligence against Levin, Mick Levin, PLC, and Robertson, *id.* ¶¶ 353-359.  The Court proceeds to discuss each of these causes of action in turn.

### A.  Defamation *Per Se*

In Count One of the Supplemental Counterclaims, Counter-Claimants allege that the TAC contained ten defamatory statements.  *See* Supp. Counterclaims ¶ 325 (listing paragraphs 62, 60, 49, 47, 65, 90, 91, 100, 101, and 103 of the TAC as the relevant defamatory statements).  Counterclaim Defendants move to dismiss this cause of action primarily on the basis that the TAC's allegations are absolutely privileged, having been made as part of a judicial proceeding.  *See* Motion at 5-6.

 "Under New York law, the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault that causes special harm or constitutes defamation *per se*."  *Jeanty v. Cerminaro*, No. 21-1974, 2023 WL 325012, at *7 (2d Cir. Jan. 20, 2023) (cleaned up).[8]  "[U]nder New York law . . . absolute immunity from liability for defamation exists for oral or written statements made in connection with a proceeding before a court."  *Brown v. Maxwell*, 929 F.3d 41, 52 (2d Cir. 2019) (internal quotation marks and alteration omitted).  "The absolute privilege applicable to the statements of participants in judicial proceedings is not lost by the presence of actual malice."  *Kelly v. Albarino*, 485 F.3d 664, 666 (2d

---

[8] Since both parties apply New York law in their briefs—in addition to Counter-Claimants having explicitly pleaded a New York cause of action in their Supplemental Counterclaims, *see infra* III.C—the Court applies New York substantive law to the Supplemental Counterclaims.  *See Texaco A/S v. Com. Ins. Co.*, 160 F.3d 124, 128 (2d Cir. 1998) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997))).

Cir. 2007) (internal quotation marks omitted).  For the privilege to apply, the statements "must be pertinent to the matter before the Court."  *Id.* (internal quotation marks omitted).  However, "this is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense."  *Id.* (internal quotation marks omitted).

The Court readily concludes that the TAC's allegations are absolutely privileged, as they are pertinent to the litigation, especially given the very broad standard for pertinence.  The statements—all of which concern ITGA, Club West, and Plaintiffs' ensuing malpractice claims related thereto—are highly pertinent to Plaintiffs' claims in this action.  The Counter-Claimants argue that Plaintiffs' "fil[ing] their Third Amended Complaint even though they had dismissed the same claims in Colorado with prejudice . . . means that [their] allegations were unrelated to seeking relief *that had merit*."  Opposition at 18 (emphasis added).  However, as is implied by the excerpt about unmeritorious defenses from *Kelly*, whether the claims were meritorious has no bearing on the privilege analysis.  The fact remains that the relevant allegations all come from the TAC and, having met the liberal standard for pertinence, are absolutely privileged.

The Court thus dismisses Count One.[9]

---

[9] Counter-Claimants also purported to bring a claim for false light in Count One.  *See* Opposition at 18 ("The Undersigned pleaded defamation per se and false light in accordance with [New York Civil Practice Law and Rules ('C.P.L.R.') Section] 3016(a).").  Although not necessary to the Court's analysis given the conclusions reached above, Counterclaim Defendants are correct to point out that no such cause of action exists under New York law.  *Hirsch v. Kairey*, No. 22 Civ. 5064 (EK), 2023 WL 5532732, at *7 n.8 (E.D.N.Y. Aug. 28, 2023) ("New York does not recognize a cause of action for false light." (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 703 (N.Y. 1993))); *see* Motion at 6.

**B.  Abuse of Process**

Count Two of the Supplemental Counterclaims alleges that Counterclaim Defendants "used the Court process to achieve [improper] ends," Suppl. Counterclaims ¶ 333, by instituting the present action under "a racist theory that a young, black attorney, who had been accused of legal malpractice, would be susceptible to that claim, even if that claim was wholly fabricated," *id.* ¶ 332.  "Under New York law, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"  *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

In their initial briefing, Counterclaim Defendants "agree[d] that they 'utilized a legal process'" and instead argued that the Counter-Claimants have failed to establish the other prongs detailed above.  Motion at 6 (citing *Savino*, 331 F.3d at 76); *see id.* at 6-7.  Counterclaim Defendants reversed course after the Court invited supplemental briefing on the first prong.  *See* Dkt. 295 at 1-2 (arguing that the Supplemental Counterclaims fail to allege an abuse of process claim because, *inter alia*, Counter-Claimants "do not identify any act or forbearance the present litigation has required of Defendant Williams"); Dkt. 293 (Order inviting briefing on this issue).  "[T]o qualify as legal process for purposes of an abuse-of-process claim, the court-issued writ must not only 'direct[] or demand that the person to whom it is directed shall perform or refrain from the doing of some [prescribed] act,' but also 'interfere[] with one's person or property.'"  *Higgins*, 816 F. App'x at 514 (quoting *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969)).  "Because no such interference flows from the issuance of a civil summons, the commencement of a civil

action cannot, by itself, support a plaintiff's claim for abuse of process, even when the civil action was 'intended to cause the plaintiff[] expense and to burden [him] with the defense of a protracted legal proceeding.'" *Id.* (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)).

That is all Counter-Claimants have alleged here. While they fail to specify in their pleading what precise actions constitute the process that was abused, *see* Suppl. Counterclaims ¶ 333 ("ITGA LLC, Richard Breuninger, Mick Levin, Mick Levin PLC used the Court process to achieve their ends was [sic] not proper."), their opposition briefing makes clear that the process in mind is the filing of complaints, *see* Opposition at 20 ("After the Movants agreed to their scheme, the Movants then filed several complaints . . . . Movants bent a regularly issued proceeding to their own ends."). Counter-Claimants reiterated this position in their supplemental briefing. *See* Dkt. 296 at 2 (summarizing the basis for Count Two as "Plaintiffs and their attorneys [having] brought this and other suits knowing that they were frivolous but did so to obtain funds from [Williams] and the law firms with which [he] was associated"). The filing of these complaints and general prosecution of these lawsuits cannot alone support an abuse of process claim under New York law. *See Higgins*, 816 F. App'x at 514 ("The core of Plaintiffs' grievance is that Defendants filed and prosecuted a series of duplicative, frivolous, and malicious lawsuits aimed at harassing Plaintiffs and draining their resources. . . . Given the disinclination of New York courts to say that the institution of a frivolous lawsuit is actionable as abuse of process, we decline to adopt Plaintiffs' novel argument that those courts would treat the aggregation of such suits differently.").

The Court thus dismisses Count Two.

## C. Section 487 of the New York Judiciary Law

Count Three of the Supplemental Counterclaims alleges that Levin and Robertson violated Section 487 of the New York Judiciary Law by bringing claims that they knew lacked merit to

further their "scheme whereby they believed that a young black attorney would be more susceptible to a legal malpractice claim and that [the] law firm with which he was affiliated would believe such a claim and pay them $2 million dollars or more."  Suppl. Counterclaims ¶ 339.

"To establish a claim under New York Judiciary Law § 487, a plaintiff must show, at a minimum, that defendant: (1) is guilty of deceit or collusion, or consented to any deceit or collusion; and (2) had an intent to deceive the court or any party."  *Shad v. Zachter PLLC*, No. 23 Civ. 10724 (GHW) (SDA), 2024 WL 2020794, at *6 (S.D.N.Y. Mar. 7, 2024) (cleaned up), *report and recommendation adopted*, 2024 WL 2061703 (S.D.N.Y. May 3, 2024).  "Judiciary Law § 487 claims require that the plaintiff 'show either a deceit that reaches the level of egregious conduct or a chronic and extreme pattern of behavior on the part of the defendant attorneys.'"  *Ray v. Fariello*, No. 23-274, 2024 WL 390293, at *1 (2d Cir. Feb. 2, 2024) (quoting *Savitt v. Greenberg Traurig, LLP*, 5 N.Y.S.3d 415, 416 (1st Dep't 2015)).

Counter-Claimants' opposition briefing, combined with the Supplemental Counterclaims themselves, state a number of bases on which this cause of action is predicated, all of which at least ostensibly underpin the aforementioned purported scheme.  Because the Court credits Counterclaim Defendants' argument that Counter-Claimants have failed to allege a plausible showing of an egregious level of deceit, none of the proffered rationales are ultimately availing.  *See* Motion at 8-9.

First, Counter-Claimants contend that Counterclaim Defendants violated Section 487 by "amending their Complaint three times to allege a damages theory directly at odds with a default order they had obtained against Muhammad Howard in Arizona based on the same allegations as this case" and "by failing to provide one shred of evidence about ITGA's financial condition, even though that is essential to their claim."  Opposition at 13.  It remains unclear why this conduct is

deceitful.  Even credited as true, Counterclaim Defendants' failure to provide evidence might reflect poor lawyering, as opposed to mendacious conduct.  *Cf. O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) ("[A]n action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487.").  The same logic applies to the Supplemental Counterclaims' objection to Levin having filed the TAC without having first "obtained the evidence he [testified that] he was looking for from Muhammad Howard to support the claim for legal malpractice": Levin lacking certain pieces of evidence does not mean that there was no basis for the malpractice claim.  Suppl. Counterclaims ¶ 342; *see id.* ¶ 343.  As for the new damages theory, Counter-Claimants' contention that the damages theory in this case essentially had to align with the August 24, 2021 default judgment that ITGA and Breuninger obtained against Howard and Ultegra is without merit. *See* Suppl. Counterclaims ¶ 269.  Although the Supplemental Counterclaims do not specify the causes of action for which ITGA and Breuninger had a default judgment entered, the judgment against Howard and Ultegra could not have resulted from a *legal* malpractice claim against them, since neither Howard nor his company are attorneys.  The Supplemental Counterclaims also do not allege that any default judgment was entered against Williams.  The discrepancy between the damages theories thus does not support a finding of deceit.  More generally, "the fact that [Counterclaim Defendants] opted to pursue a different legal strategy in federal court than . . . in . . . state court . . . is not necessarily indicative of deceitful intent." *Tacopina v. Kerik*, No. 14 Civ. 749 (LTS), 2016 WL 1268268, at *6 (S.D.N.Y. Mar. 31, 2016).

Counter-Claimants also appear to make much of the purported discrepancies between the TAC and Breuninger's January 13, 2022 deposition testimony from the Colorado proceeding mentioned above, *see* Suppl. Counterclaims ¶ 136—which preceded the October 24, 2022 filing

of the TAC by some nine months—all in an apparent attempt to provide support for the assertion that Counterclaim Defendants "alleg[ed] bogus claims that they knew were bogus before they filed them," Opposition at 15. Whatever discrepancies may exist between Breuninger's deposition testimony and the TAC, none of the differences on which Counter-Claimants home in appear to support an extreme form of deceit, nor is it even clear that some of these discrepancies are genuine. Counter-Claimants primarily object to the TAC's allegation that "[b]ased on the advice of . . . Williams, . . . Breuninger authorized . . . Williams to sign [a] Chapter 11 Bankruptcy Petition on his behalf as [an] authorized representative of ITGA," TAC ¶ 49, because "Breuninger testified before he never met [Williams], never spoke[] with [Williams] without Muhammad Howard, and never knew of [Williams] until he saw a public bankruptcy filing [Williams] had prepared," Opposition at 13. *See* Suppl. Counterclaims ¶ 258 ("Richard Breuninger testified, contrary to the allegation at Paragraph 49 of the Third Amended Complaint, that T. Edward Williams, Esq., never provided him any legal advice . . . ."). Counter-Claimants also assert that Counterclaim Defendants "made up allegations about [Williams] having a telephone conference with Breuninger even though Breuninger had testified in his deposition that he never spoke with or met [Williams]." Opposition at 14-15. But the Supplemental Counterclaims themselves make clear at least a plausible basis on which Counterclaim Defendants made this allegation: Williams himself. According to the Supplemental Counterclaims, Breuninger denied any memory of a phone call with Williams only after he was asked a question about "Mr. Williams testif[ying] during his deposition that on the day of the bankruptcy filing, he and Mr. Howard together placed a phone call to [Breuninger] and [the two of them] spoke on the phone then." Suppl. Counterclaims ¶ 219.

16

To be sure, this does not necessarily confirm that a phone call took place or that "Williams obtained information necessary to file a Chapter 11 Bankruptcy Petition from Richard Breuninger," as alleged in the TAC. *Id.* ¶¶ 277-278 (quoting TAC ¶¶ 45-46). But the import of this allegation lies in its showing that there was at least *a* basis for thinking that a Breuninger-Williams phone call took place around the time of the bankruptcy filing, a conclusion that in turn undercuts a claim of egregious deceit. After all, "[a] lawyer is not confined to the personal knowledge of his client when he drafts a complaint. He may also rely on other sources of evidence, and he may further investigate a claim after his client testifies to correct or supplement his client's own personal knowledge of the facts." *Wade v. Kay Jewelers, Inc.*, No. 17 Civ. 990 (MPS), 2018 WL 4440532, at *3 (D. Conn. Sept. 17, 2018). The same principle also applies to the legal advice claim more generally: Counterclaim Defendants were not required to credit only the version of events to which Breuninger had testified.

That leaves perhaps the most inflammatory allegation that ostensibly supports Counter-Claimants' Section 487 claim; namely, that "Mick Levin and John Robertson sued because they believed that once they wrote a demand letter to [Williams]'s firms showing that its young, black lawyer had erred, they would get a payday, even though their claim lacked merit." Opposition at 15-16. Simply put, this claim will not pass muster without "factual allegations actually demonstrating" that Counterclaim Defendants' "*knowingly* made false statements." *Seagrape Invs. LLC v. Tuzman*, No. 19 Civ. 9736 (RA), 2020 WL 5751232, at *24 (S.D.N.Y. Sept. 25, 2020). After all, "courts have also held that an assertion of unfounded allegations in a pleading"—as opposed to knowingly false allegations—"even if made for improper purposes, does not provide a basis for liability under Section 487." *Bryant v. Silverman*, 284 F. Supp. 3d 458, 472 (S.D.N.Y. 2018) (cleaned up). Given Counter-Claimants' failure to adequately support the proposition that

17

Counterclaim Defendants made knowingly false statements in the TAC so as to render this claim plausible—as discussed above—even the most distasteful of motives will not suffice to make out a Section 487 claim.

The Court thus dismisses Count Three.

### D.  Unjust Enrichment and Quantum Meruit

The fourth cause of action for unjust enrichment and quantum meruit alleges that ITGA and Breuninger were unjustly enriched by not paying Williams the legal fees he incurred for his work related to Club West for their benefit.  Suppl. Counterclaims ¶¶ 346-349; *id.* ¶ 347 ("T. Edward Williams incurred legal fees (not including costs) in the amount of $137,500.45 with interest accruing at 9% from 2018.").

"Under New York law, unjust enrichment and quantum meruit claims are analyzed together as a single quasi-contract claim." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 365 (2d Cir. 2021).  "The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 594 (2d Cir. 2024) (quoting *GFRE, Inc. v. U.S. Bank, N.A.*, 13 N.Y.S.3d 452, 454 (2d Dep't 2015)).  "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Lebetkin v. Giray*, No. 20-1374, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021); *accord Foros Advisors LLC v. Digit. Globe, Inc.*, 333 F. Supp. 3d 354, 364 (S.D.N.Y. 2018).

Counterclaim Defendants raise two arguments in favor of dismissal, but neither is availing.

First, Counterclaim Defendants claim that the Court cannot exercise specific personal jurisdiction

over Breuninger and ITGA for this claim because the cause of action "alleges that Defendant

Williams is owed legal fees from Plaintiffs in connection with legal services he rendered to ITGA,

LLC in Arizona."  Motion at 5.  Counterclaim Defendants argue that because "[t]his claim does

not arise out of any business activity conducted in New York by the Counter-Defendants[,] [i]t

may only properly be brought in Arizona."  *Id.*  For the reasons discussed at *supra* II regarding

personal jurisdiction over Breuninger and ITGA, this argument is unavailing.   Second,

Counterclaim Defendants also contend that this claim is untimely because the statute of limitations

for unjust enrichment and quantum meruit claims is ostensibly three years.  *See* Motion at 9.

Counterclaim Defendants plainly misstate the law; both federal and New York state courts have

repeatedly held that the statute of limitations for unjust enrichment and quantum meruit claims is

six years pursuant to C.P.L.R. Section 213(2).  *See, e.g.*, *Nwoye v. Obama*, No. 23-1178, 2024 WL

911753, at *1 (2d Cir. Mar. 4, 2024) ("Under New York law, the statute of limitations for both

[unjust enrichment and quantum meruit] claims is six years."); *Simon v. FrancInvest, S.A.*, 146

N.Y.S.3d 9, 12 (1st Dep't 2021) ("Contrary to defendants' assertion that the applicable statute of

limitations is three years, the statute for unjust enrichment is six years. . . .  So [is] the statute of

limitations for quantum meruit . . . .").  The Supplemental Counterclaims' allegation—which

appears to be undisputed by Counterclaim Defendants—that Howard directed Williams "to stop

performing work on all matters related to ITGA" on September 10, 2018, Suppl. Counterclaims

¶ 57, means that the statute of limitations for any quantum meruit or unjust enrichment claims

related to this work would only appear to expire on September 10, 2024.  The claims in Count

Four are thus timely even without relying on Counter-Claimants' argument that the filing of the

Complaint tolled the statute of limitations under C.P.L.R. Section 203(d).  *See* Opposition at 11-12; *Cojocaru v. City Univ. of New York*, No. 19 Civ. 5428 (AKH), 2020 WL 5768723, at *3 (S.D.N.Y. Sept. 28, 2020) (discussing the effect of C.P.L.R. Section 203(d) on the timeliness of counterclaims).

The Court thus declines to dismiss Count Four.

### E. Civil Conspiracy

The Supplemental Counterclaims' fifth cause of action alleges that ITGA, Breuninger, Levin, and Mick Levin PLC "colluded and agreed to violation [sic] Rules 3.1 and 8.4(d) of the New York Rules of Professional Conduct . . . [by] maintain[ing] a claim even though they knew the claims were frivolous and groundless."  Suppl. Counterclaims ¶ 351.  New York Rule of Professional Conduct 3.1(a) provides in relevant part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous," while Rule 8.4(d) forbids a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice."  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0.  "To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (internal quotation marks omitted).

This claim fails because Counter-Claimants have failed to allege an underlying tort.  As detailed above, the Supplemental Counterclaims make clear that the at-issue tort stems from supposed violations of the New York Rules of Professional Conduct.  However, as Counterclaim

Defendants point out, "violations of the Rules of Professional Conduct give rise to no private right of action." *Anderson v. Greene*, No. 14 Civ. 10249 (KPF), 2016 WL 4367960, at *30 (S.D.N.Y. Aug. 10, 2016), *aff'd*, 774 F. App'x 694 (2d Cir. 2019); *see* Motion at 10.  Counter-Claimants aim to distance themselves from the Supplemental Counterclaims' own allegations by claiming that a mish-mash of allegations—apparently as opposed to violations of the Rules of Professional Conduct—underpin Count Five, pointing to allegations that Counterclaim Defendants "defamed the Undersigned, abused this court's process, violated § 487 of the Judiciary Law, unjustly enriched themselves, and that they were negligent [sic]."  Opposition at 21.  "A plaintiff . . . is not permitted to interpose . . . a new legal theory in opposing a motion to dismiss."  *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017).  The Supplemental Counterclaims plainly allege in Count Five that Counterclaim Defendants "colluded and agreed to violat[e]" the two professional responsibility rules highlighted above and not any other alleged tort.  Suppl. Counterclaims ¶ 351.  Had Counter-Claimants intended to predicate this cause of action on another alleged tort, they surely knew how to do so.

Given that Counter-Claimants lack a cause of action for violations of the Rules of Professional Conduct, Count Five cannot stand.  The Court thus dismisses this cause of action.

### F. Negligence

The Supplemental Counterclaims' sixth and final cause of action accuses Mick Levin, Mick Levin, PLC, and Robertson of negligence by bringing the instant action despite knowing it was meritless, all in violation of their "duty [to Williams] to advice [sic] clients not to engage in illegal schemes to bring unmeritorious claims."  Suppl. Counterclaims ¶ 354.  "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  *Cummings v. City of New*

*York*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022) (internal quotation marks omitted).

The Court agrees with Counterclaim Defendants that Counter-Claimants have failed to allege a legally cognizable duty owed by Levin, his law firm, and Robertson to Williams. *See* Motion at 10-11. "[R]elevant decisions by New York courts make abundantly clear that an attorney does not owe a duty of care to an adversary." *Crews v. Cnty. of Nassau*, 612 F. Supp. 2d 199, 205 (E.D.N.Y. 2009) (Bianco, J.) (collecting cases). While the existence of contractual privity or a relationship near privity can provide an exception to that rule, no such relationship is alleged here, at least with respect to Plaintiffs' (and Plaintiffs' counsel's) decision to file the instant lawsuit. *See id.* at 206. Instead, Counter-Claimants' opposition brief appears to argue that this cause of action is an attempt to bring a private right of action for alleged violations of the New York Rules of Professional Conduct. *See* Opposition at 19 ("[Counter-]Defendants argue that the attorneys did not owe [Williams] a duty because [Williams] was not a client of Mick Levin and John Robinson [sic]. Movants are wrong. The Rules of Professional Conduct—especially the ones cited—protect clients and non-clients alike."). As detailed above, no such cause of action exists. *See supra* III.E.

The Court therefore dismisses Count Six.

## IV.  Leave to Amend

Lastly, the Court considers whether to grant Counter-Claimants leave to amend for a third time. As previously detailed, Judge Lehrburger previously granted Counter-Claimants leave to file first amended counterclaims and then supplemental counterclaims. *See* Dkts. 182, 261. The Court cannot discern a request by Counter-Claimants for leave to file additional amendments in their briefing on the instant motion. Accordingly, the Court declines to *sua sponte* grant leave to

amend and dismisses with prejudice all counterclaims except for Count Four.  *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013) ("While leave to amend under the Federal Rules of Civil Procedure is freely granted, no court can be said to have erred in failing to grant a request that was not made." (internal quotation marks omitted)).

## V.  Conclusion

For the foregoing reasons, the Court dismisses Counts One, Two, Three, Five, and Six with prejudice.  The Clerk of Court is respectfully directed to close Docket Number 231.

SO ORDERED.

Dated: June 20, 2024
       New York, New York

_____
JOHN P. CRONAN
United States District Judge